UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
MANOUCHEKA FRANCOIS,

                    Plaintiff,

    -against-

METRO-NORTH COMMUTER RAILROAD
COMPANY,

        Defendant/Third Party Plaintiff,

    -against-

HUDSON VALLEY TRANSPORTATION AND
MICHAEL CELLANTE,

         Third Party Defendants.
-------------------------------------------------------------------

20-CV-4439 (ALC)(KHP)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Manoucheka Francois brings this lawsuit under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §51 *et seq.*, alleging that she was injured due to the negligence of a taxi driver Metro-North hired to transport the plaintiff between work locations. Defendant Metro-North Commuter Railroad Company ("Metro-North") now moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

Unless stated otherwise, the facts are derived from defendant's Local Civil Rule 56.1 Statement of Undisputed Facts.[1] ECF No. 58. Where the facts are subject to legitimate dispute,

---

[1] For a few of defendant's undisputed facts, plaintiff filed objections, principally based on the admissibility of evidence cited by Metro-North. The Court holds that the cab driver's statements to the arresting officer are admissible under the Federal Rules of Evidence as opposing party statements / statements against interest. *See* Fed. R. Evid. 801(d)(2)(A); Fed. R. Evid. 804(b)(3)(A).

1

they are construed in favor of the non-moving party. *See Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 283 (2d Cir. 2005).

In July 2017, Plaintiff Francois was employed by Metro-North as a Conductor. Def.'s Rule 56.1 Statement ("Def.'s Stmt.") ¶ 1. On July 7, 2017, Francois reported to the Metro-North North White Plains headquarters at approximately 5:00 p.m. *Id.* at ¶ 2. Francois completed her last train run from Grand Central Terminal to the Southeast Station in Southeast, New York, at approximately 1:15 a.m. on July 8, 2017. *Id.* at ¶ 3. Metro-North's Crew Management hired a taxi to drive Francois from the Southeast Station back to her headquarters in North White Plains. *Id.* at ¶ 4. Third-party defendant, Hudson Valley Transportation ("HVT"), was hired to transport Francois that morning. *Id.* at ¶ 5. Michael T. Cellante was driving the HVT taxi sent to pick up Francois at Southeast Station. *Id.* at ¶ 6. When she was picked up, Francois did not observe any alcohol or any indication that Cellante was intoxicated. *Id.* at ¶ 7. As the taxi driven by Cellante was entering Interstate 684, Cellante was "traveling too fast for road character and conditions and [lost] control," and the vehicle came to rest in a ditch off the shoulder of the highway. *Id.* at ¶ 8. When a police officer arrived at the scene, Cellante admitted that he had had four to five "shots [of alcohol]" approximately one hour before driving the taxi. *Id.* at ¶ 9-10. Mr. Cellante was arrested at the accident location for driving while intoxicated. Def.'s Stmt. ¶ 12; Compl. ¶ 12. On December 12, 2017, Cellante was convicted of "Driving while impaired," with a violation date of July 8, 2017. Def.'s Stmt. ¶ 13; Ex. F.

## LEGAL STANDARD

Summary judgment is appropriate only where all submissions, pleadings, affidavits, and discovery materials that are before the Court, taken together, "show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F.Supp.3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson*, 477 U.S. at 248). "The moving party bears the initial burden of showing that there [is] no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and citations omitted). Courts must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks and citations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Still, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

    The FELA provides, in pertinent part: "Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier . . ." 45 U.S.C. § 51. FELA plaintiffs must prove the traditional common law elements of duty, breach, foreseeability and causation. *See, e.g., Tufariello v. Long Island R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006). Although a plaintiff's standard of proof is relaxed under the FELA as compared to common law negligence actions, "FELA does not make an

employer strictly liable for workplace injuries and, therefore, requires that claimants must at least offer some evidence that would support a finding of negligence." *Sinclair v. Long Island R.R.*, 985 F.2d 74, 76-77 (2d Cir. 1993). Under the FELA, railroads have a duty to provide employees with a safe workplace and breaches that duty "if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees." *Tufariello*, 458 F.3d at 91. "Reasonable care is determined in light of whether or not a particular danger is foreseeable." *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994). The railroad's duty is "measured by what a reasonably prudent person would anticipate as resulting from a particular condition – defendant's duties are measured by what is reasonably foreseeable under like circumstances – by what in the light of the facts then known, should or could reasonably have been anticipated." *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 118 (1963) (internal quotations omitted).

## DISCUSSION

Metro-North does not dispute that Cellante was acting as its agent when he drove plaintiff and doesn't dispute that railroads may be held liable for an agent's misconduct under the FELA. Metro-North's principal arguments for summary judgment are that they cannot be held liable for plaintiffs' injuries because there is no scenario under which drinking alcohol was within the scope of Cellante's agency, no basis by which Metro-North could have foreseen that Cellante would become intoxicated prior to driving his taxi, and no basis for Metro-North to foresee that the dispatcher would send an intoxicated driver to transport Plaintiff.

Under the FELA, "employers are liable for the negligence of their employees only if it occurs within the scope of employment, and no liability attaches when an employee acts entirely

upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer." *Gallose v. Long Island R. Co.*, 878 F.2d 80, 83 (2d Cir. 1989) (internal citations omitted). The Second Circuit has held that the central inquiry in deciding whether an act was within the scope of employment is if the act can be construed as "within the limits of [one's] employment duties, attempting to further [one's] employer's interests[.]" *Gallose*, 878 F.2d at 84. Further, the scope of employment issue may be taken from the jury only when it is clear that "reasonable men could not reach differing conclusions". *Id.* (citing *Baker v. Texas & Pacific Railway Co.,* 359 U.S. 227, 228 (1959)). "A FELA case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." *Kendall v. Metro North Comm. R.R.*, 2014 WL 1885528 *2 (S.D.N.Y. May 12, 2014)(internal citations and quotations omitted).

Sometimes an employee/agent is not acting within the scope of her employment/agency because they are taking an unauthorized break from work to engage in horseplay, pranks, or something else purely for their own amusement. Sometimes an employee/agent is not acting within the scope of their employment/agency due to how he attempted to perform his duties. It is easy to conflate these different ways of not acting for the boss's benefit.

This confusion is borne out in the parties' arguments about *Reynolds v. Sealift, Inc.*, a district court opinion in a Jones Act case, affirmed by the Second Circuit in a summary order. *Reynolds v. Sealift, Inc.*, No. 04 Civ. 4665 (ENV)(RER), 2007 WL 9725166 (E.D.N.Y. Aug. 6, 2007), *aff'd*, 311 Fed. App'x 422 (2d Cir. 2009).

In *Sealift*, the plaintiff, Reynolds, was drunk, returning from shore leave by foot, and encountered a drunk shipmate. Reynolds' shipmate fell into the water; Reynolds dove in to help his drunken shipmate. After helping his shipmate out of the water, Reynolds, still drunk,

wandered off into the middle of a road. A truck hit him, causing injuries. *Reynolds*, 2007 WL 9725166 at *2-4. The Circuit affirmed the district court finding that the shipmate was acting within the scope of his employment by returning to the ship following leave. In other words, what the shipmate was doing–returning to the ship–was in his employer's interests and in the scope of his employment. However, the Court found that the way the shipmate tried to return to the ship–drunk–was not in the scope of his employment. *Reynolds*, 311 Fed. App'x at 424-425.

By picking up the plaintiff in the company's cab and driving toward the Metro North headquarters, Cellante was doing exactly what Metro North hired him to do. However, the issue in this case concerns how Cellante attempted to fulfill his responsibility to the principal– impaired by alcohol.

A reasonable jury could not find that the driver was attempting to further his employer's interests by driving while impaired. Driving while impaired is a crime. The principal's goal of having the plaintiff transported safely from one location to another is undermined, not furthered, by its agent downing 4 to 5 shots of alcohol one hour before getting behind the wheel of a cab. The driver got zozzled for his own amusement, upon his own impulses, and with absolutely no benefit to Metro North.

In addition, there is no evidence that the defendants could have foreseen that the cab driver would commit a crime by getting soused before driving the plaintiff in his cab. There is no evidence that Metro North knew about the cab driver's propensity to drive drunk. *See Higgins v. Metro North R. Co.*, 318 F. 3d 422 (2d Cir. 2003). Nor is there any evidence that Metro North knew that the taxi company would dispatch a drunk driver to transport a Metro North employee.

Attempting to overcome these hurdles, Plaintiff claims that Metro North hasn't proffered admissible evidence of Cellante's inebriation. Plaintiff is wrong. Cellante's admission that he "had approximately 4 to 5 shots about an hour prior to driving" is admissible under 801(d)(2). In addition, the certified DMV record, to which plaintiff did not object, shows Cellante's conviction for driving while impaired during the incident.

Plaintiff also posits that the Defendant hasn't established that the driver's inebriation caused the accident, claiming that the real cause of the crash was driving at an unsafe speed, further asserting that one can operate at an unsafe speed even if not intoxicated. ECF No. 59 at 7-8. Although the plaintiff tries valiantly to separate the driver's intoxication from driving at an unsafe speed, a jury is not permitted to engage in rank speculation, untethered to any evidence in the case. It is true that a sober person could speed. But the driver in this case wasn't sober. There is no evidence for a jury to base any belief that the driver's inebriation did not cause the accident, including his driving at an unsafe speed.

The Court recognizes that it is extremely rare in a FELA case to take the issues of agency or foreseeability away from a jury. This is one of those rare cases. No reasonable jury could find that Cellante was acting within the scope of his agency by driving drunk. No reasonable jury could find that Metro North could have foreseen that Cellante would drive drunk or that the cab company would dispatch a drunk driver to transport the plaintiff from one worksite to another.

## CONCLUSION

For the reasons stated above, the Court enters summary judgment for defendant Metro-North. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 55 and close the case.

**SO ORDERED.**

**Dated:**     **New York, New York**
               **March 30, 2023**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**